UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
TAÍNA LYONS,

                                                            Case No.: 1:25-cv-08689-AT

                        Plaintiff,

        v.

DISCALED, INC.,
(DBA "MARK MORRIS DANCE GROUP")
and MARK MORRIS, individually,

                        Defendants.
------------------------------------------------------------------X


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT PURSUANT TO**
**FED. R. CIV. P. 12(b)(6)**


Dated:  Woodbury, New York
        February 20, 2026


                                        MILBER MAKRIS PLOUSADIS
                                        & SEIDEN, LLP
                                        *Attorneys for Defendants*
                                        1000 Woodbury Road, Suite 402
                                        Woodbury, New York 11797
                                        (516) 712-4000
                                        File No.: 420-30826

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ........................................................................................ ii

PRELIMINARY STATEMENT .................................................................................. 1

I. THE STANDARD FOR DISMISSAL PURSUANT TO FED. R. CIV. P. 12(b)(6)................ 2

II. PLAINTIFF'S FIRST, THIRD, EIGHTH, AND TENTH CAUSES OF ACTION FAIL TO ESTABLISH THAT SHE WAS THE SPECIFIC SUBJECT OF ANY ADVERSE EMPLOYMENT ACTION OR "LESS WELL" TREATMENT ON THE BASIS OF HER RACE. ......................................................................................................... 3

   A. Plaintiff's Title VII claims fail because she does not allege that she suffered an adverse employment action on the basis of her race. ...................................................... 3

   B. Plaintiff's Section 1981 claims fail because she does not allege that her race was the but-for cause of any injury she specifically suffered. ...................................... 8

   C. Plaintiff's NYSHRL and NYCHRL claims fail because she does not allege that she was subjected to any "less well" treatment on the basis of her race. ............................ 9

III. PLAINTIFF'S FIFTH, EIGHTH, AND TENTH CAUSES OF ACTION FAIL TO ESTABLISH ANY FAILURE TO ACCOMMODATE OR ANY CONNECTION BETWEEN THE PETTY SLIGHTS AND TRIVIAL INCONVENIENCES SHE ALLEGEDLY EXPERIENCED AND THE ALLEGED PHYSICAL LIMITATIONS SHE CLAIMS TO HAVE SUFFERED FROM. ........................................................................... 11

   A. Plaintiff's ADA claims fail because she does not allege a failure to accommodate nor any causal connection between her alleged disabling conditions and an alleged adverse employment action. ................................................................................ 11

   B. Plaintiff's NYSHRL and NYCHRL claims fail because she alleges only mere petty slights and trivial inconveniences as the basis for her discrimination claims and fails to connect those slights and inconveniences to her alleged physical limitations. ............................ 14

IV. PLAINTIFF'S SECOND, FOURTH, SIXTH, NINTH, AND ELEVENTH CAUSES OF ACTION RELY ON SCATTERED INSTANCES OF PROTECTED ACTIVITY WHICH SHE FAILS TO CONNECT IN ANY WAY TO HER TERMINATION. ........................... 17

   A. Plaintiff's retaliation claims fail because she fails to allege an adverse employment action or that she was reasonably deterred from bringing an additional protected complaint as the result of Defendants' response to her protected activity ................................. 17

   B. Plaintiff's retaliation claims fail because they are predicated upon instances of protected activity occurring several months prior to her alleged termination. .................................... 20

V. PLAINTIFF'S SEVENTH CAUSE OF ACTION RELIES ON PROTECTED FMLA LEAVE OCCURRING ONE YEAR PRIOR TO HER ALLEGED TERMINATION. ....................... 22

VI. PLAINTIFF SHOULD NOT BE PERMITTED TO AMEND HER ALLEGATIONS AS SHE HAS ALREADY BEEN PLACED ON NOTICE OF DEFICIENCIES SHE HAS SINCE FAILED TO CURE. .................................................................................. 23

CONCLUSION.......................................................................................................... 25

i

# TABLE OF AUTHORITIES

Page(s)

Cases

*Alfano v. Costello*,
  294 F.3d 365 (2d Cir. 2002)............................................................................ 15

*Anderson v. City of New York*,
  712 F. Supp. 3d 412 (S.D.N.Y. 2024).............................................................. 12

*Aquino v. Uber Techs., Inc.*,
  2023 WL 3025268 (S.D.N.Y. Apr. 20, 2023)..................................................... 3

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...................................................................................... 2, 3

*Bell Atlantic Corp v. Twombly*,
  550 U.S. 544 (2007)...................................................................................... 2, 3

*Bloise v. Q4 Generational Wealth, Inc.*,
  22-cv-10488 (JHR) (SDA), 2024 WL 2798862, at *2 (S.D.N.Y. May 31, 2024)...............20

*Bloom v. A360 Media LLC*,
  No. 23-CV-11024, 2024 WL 2812905 (S.D.N.Y. June 3, 2024) .......................... 23, 24

*Caddick v. Pers. Co. I LLC*,
  No. 16-cv-7326, 2018 WL 3222520 (S.D.N.Y. June 29, 2018) ............................ 22

*Cadet v. All. Nursing Staffing of New York, Inc.*,
  632 F. Supp. 3d 202 (S.D.N.Y. Sept. 29, 2022) ................................................. 18

*Cardwell v. Davis Polk & Wardwell LLP*,
  No. 19-cv-10256, 2020 WL 6274826 (S.D.N.Y. Oct. 24, 2020)............................. 8

*Chin v. N.Y.C. Dep't of Corr.*,
  No. 23-CV-5268 (AMD) (JAM), 2024 WL 2258033 (E.D.N.Y. May 17, 2024) ................... 19

*Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*,
  140 S. Ct. 1009 (2020)..................................................................................... 8

*Crosby v. Stew Leonard's Yonkers LLC*,
  695 F. Supp. 3d 551 (S.D.N.Y. Sept. 28, 2023) ...................................... 17, 21, 22

*Davis v. N.Y.C. Dep't of Educ.*,
  804 F.3d 231 (2d Cir. 2015)......................................................................... 11, 12

*Desiderio v. Hudson Techs.*,
  No. 22-cv-541, 2023 WL 185497 (S.D.N.Y. Jan. 13, 2023) ............................... 23

*Dickerson v. BPP PCV Owners LLC*,
  2024 WL 4696088 (S.D.N.Y. Nov. 6, 2024)....................................................... 24

*Dixon v. City of N.Y.*,
  No. 23-cv-8941, 2025 WL 50140 (S.D.N.Y. Jan. 7, 2025) .............................. 9, 16

*Espinoza v. CGJC Holdings LLC*,
  No. 23-cv-9133 (DLC), 2024 WL 3520662 (S.D.N.Y. July 23, 2024) .................... 15

*Farmer v. Shake Shack Enters., LLC*,
  473 F. Supp. 3d 309 (S.D.N.Y. July 21, 2020) .................................................. 18

*Feliciano v. City of New York*,
  No. 14-cv-6751, 2015 WL 4393163 (S.D.N.Y. July 15, 2015)...........................................22
*Flood v. UBS Asset Mgmt.*,
  No. 10-cv-374, 2012 WL 288041 (S.D.N.Y. Feb. 1, 2012) ...................................................21
*Forrester v. Corizon Health, Inc.*,
  752 Fed. Appx. 64 (2d Cir. 2018).........................................................................................19
*Goodwine v. City of New York*,
  2016 WL 3017398 (S.D.N.Y. May 23, 2016) ........................................................................10
*Graziadio v. Culinary Inst. of Am.*,
  817 F.3d 415 (2d Cir. 2016)..................................................................................................22
*Haggood v. Rubin & Rothman, LLC*,
  No. 14-cv-34L, 2014 WL 6473527 (E.D.N.Y. Nov. 17, 2014).............................................. 6
*Harrisman v. City of New York Dep't of Transportation*,
  No. 19-cv-2986, 2020 WL 5211043 (S.D.N.Y. Sept. 1, 2020) .............................................23
*Kirkland-Hudson v. Mount Vernon City Sch. Dist.*,
  665 F. Supp. 3d 412 (S.D.N.Y. Mar. 29, 2023)...........................................................8, 14, 22
*Kugel v. Queens Nassau Nursing Home Inc.*,
  568 F. Supp. 3d 253 (E.D.N.Y. Oct. 20, 2021) .....................................................................15
*Lebowitz v. New York City Dep't of Educ.*,
  407 F. Supp. 3d 158 (E.D.N.Y. Mar. 31, 2017) ....................................................................15
*Lee v. Riverbay Corp.*,
  751 F. Supp. 3d 259 (S.D.N.Y. Sept. 27, 2024) ....................................................................19
*Leibowitz v. Cornell Univ.*,
  584 F.3d 487 (2d Cir. 2009)....................................................................................................3
*Littlejohn v. City of New York*,
  795 F.3d 297 (2d Cir. 2015)..................................................................................................18
*Mathirampuzha v. Potter*,
  548 F.3d 70 (2d Cir. 2008)...............................................................................................4, 12
*McSweeney v. Cohen*,
  2025 WL 966022 (S.D.N.Y. Mar. 31, 2025) ......................................................................9, 10
*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*,
  715 F.3d 102 (2d Cir. 2013).............................................................................................18, 19
*Millea v. Metro-North R. Co.*,
  658 F.3d 154 (2d Cir. 2011)..................................................................................................22
*Miller v. Levi & Korsinsky LLP*,
  695 F. Supp. 3d, 2023 WL 6293940 (S.D.N.Y. Sept. 27, 2023) ........................................... 9
*Miller v. McHugh*,
  814 F. Supp. 2d 299 (S.D.N.Y. Sept. 14, 2011) ...................................................................23
*Mitchell v. Planned Parenthood of Greater N.Y., Inc.*,
  745 F. Supp. 3d 68 (S.D.N.Y. Aug. 16, 2024)....................................................................... 8
*Ndongo v. Bank of China Ltd.*,
  No. 22-cv-5896, 2023 WL 2215261 (S.D.N.Y. Feb. 24, 2023) ............................................ 9
*Newell v. State Univ. of N.Y. Westchester Cnty. Coll.*,
  No. 22-cv-8524 (PMH), 2023 WL 4082030 (S.D.N.Y. June 20, 2023)................................12
*Nofal v. IMCMV Times Square LLC*,
  2024 WL 1138928 (S.D.N.Y. Mar. 15, 2024) ........................................................................ 9

*Papasan v. Allain*,
   478 U.S. 265 (1986)................................................................................................. 2
*Patane v. Clark*,
   508 F.3d 106 (2d Cir. 2007)..................................................................................... 15
*Paupaw-Myrie v. Mount Vernon City Sch. Dist.*,
   653 F. Supp. 3d 80 (S.D.N.Y. Jan. 30, 2023) ................................................. 3, 4, 7
*Payne v. JetBlue Airways Corp.*,
   No. 20-cv-00101 (NRM) (PK), 2024 WL 3360381 (E.D.N.Y. July 9, 2024) ......... 16
*Perry v. Ethan Allen, Inc.*,
   115 F.3d 143 (2d Cir. 1997)..................................................................................... 15
*Pimentel v. Port Authority of New York ad New Jersey*,
   2025 WL 51131 (E.D.N.Y. Jan. 8, 2025) ................................................................ 24
*Qorrolli v. Metro. Dental Assocs.*,
   124 F.4th 115 (2d Cir. 2024) ............................................................................ 18, 19
*Ronen v. RedRoute, Inc.*,
   763 F. Supp. 3d 319 (E.D.N.Y. Jan. 24, 2025) ....................................................... 18
*Royall v. City of Beacon*,
   No. 24-cv-00003, 2024 WL 4266546 (S.D.N.Y. Sept. 23, 2024) ...................... 4, 7, 8
*Salas v. N.Y.C. Dep't of Investigation*,
   298 F. Supp. 3d 676 (S.D.N.Y. Mar. 30, 2018) ................................................. 7, 18
*Sanders v. N.Y.C. Human Res. Admin.*,
   361 F.3d 749 (2d Cir. 2004)....................................................................................... 4
*Schvimmer v. Off. of Ct. Admin.*,
   857 Fed. Appx. 668 (2d Cir. 2021) .......................................................................... 24
*Seitz v. New York State*,
   No. 18-cv-4149, 2019 WL 4805257 (E.D.N.Y. Sept. 30, 2019) ............................. 23
*Sharikov v. Philips Med. Sys. MR, Inc.*,
   103 F.4th 159 (2d Cir. 2024) ................................................................................... 11
*Sharikov v. Philips Med. Sys. MR, Inc.*,
   2023 WL 2390360 (N.D.N.Y. Mar. 7, 2023) ........................................................... 18
*Smith v. N.Y. & Presbyterian Hosp.*,
   440 F. Supp. 3d 303 (S.D.N.Y. Feb. 18, 2020) ....................................................... 21
*Sosa v. Loc. Staff, LLC*,
   618 Fed. Appx. 19 (2d Cir. 2015) ............................................................................ 10
*Sosa v. N.Y.C. Dep't of Educ.*,
   368 F. Supp. 3d 489 (E.D.N.Y. Mar. 25, 2019) ................................................. 7, 14
*Sprague v. Salisbury Bank & Tr. Co.*,
   969 F.3d 95 (2d Cir. 2020)....................................................................................... 24
*Summa v. Hofstra Univ.*,
   708 F.3d 115 (2d Cir. 2013)..................................................................................... 21
*Torre v. Charter Commc'ns, Inc.*,
   493 F. Supp. 3d 276 (S.D.N.Y. Oct. 8, 2020).......................................................... 22
*United States ex rel. Ladas v. Exelis, Inc.*,
   824 F.3d 16 (2d Cir. 2016)....................................................................................... 24
*Vega v. Hempstead Union Free Sch. Dist.*,
   801 F.3d 72 (2d Cir. 2015).................................................................................. 4, 18

*Villada v. Grand Canyon Diner*,
    No. 22-cv-2782, 2024 WL 3875778 (E.D.N.Y. Aug. 19, 2024) ............................................ 16
*Wasserman v. New York City Department of Education*,
    2025 WL 1906978 (S.D.N.Y. July 10, 2025) ...................................................................... 9, 15
*Williams v. Dudley*,
    No. 23-cv-11018, 2025 WL 2842286 (S.D.N.Y. Sept. 4, 2025) ................................. 11, 12, 13
*Workneh v. Super Shuttle Int'l, Inc.*,
    No. 15-cv-03521 (ER), 2016 WL 5793744 (S.D.N.Y. Sept. 30, 2016).................................... 9
*Zann Kwan v. Andalex Grp. LLC*,
    737 F.3d 834 (2d Cir. 2013)................................................................................................. 18

Statutes

42 U.S.C. § 1981.................................................................................................................................. 1
42 U.S.C. § 12102(1) ....................................................................................................................... 12
New York Executive Law § 290........................................................................................................ 1
Section 1981, the NYSHRL.......................................................................................................... 3, 9
Title VII, Section 1981 ...................................................................................................................... 1

Rules

Fed. R. Civ. P. 8 ................................................................................................................................. 3
FED. R. CIV. P. 12(b)(6)........................................................................................... 2, 3, 6, 24, 25
Federal Rule of Civil Procedure 15(a) ............................................................................................ 23

Other Authorities

New York City Administrative Code § 8-101 .................................................................................. 1

## PRELIMINARY STATEMENT

Plaintiff, Taína Lyons (hereinafter "Plaintiff"), alleges that she worked for Defendants, the Mark Morris Dance Group and Mark Morris (hereinafter "Defendants"), as a dancer from January 20, 2022, until her alleged termination on or about May 21, 2024. *See* Amended Complaint, ¶¶ 19, 255, 259. Despite admitting that she was given every opportunity to achieve success as an Afro-Latina dancer, *see* Amended Complaint, ¶¶ 20, 21, granted all accommodation requests including those related to medical leave, *see* Amended Complaint, ¶¶ 57, 79-81, 101-104, and told that her termination related only to the needs of the company, Plaintiff now alleges unsubstantiated claims for race discrimination pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 1981, the New York Executive Law § 290 ("NYSHRL"), and the New York City Administrative Code § 8-101 ("NYCHRL"), disability discrimination pursuant to the Americans with Disabilities Act ("ADA"), NYSHRL, and NYCHRL, and retaliation pursuant to Title VII, Section 1981, the ADA, the Family & Medical Leave Act ("FMLA"), the NYSHRL, and the NYCHRL.

The allegations contained throughout Plaintiff's Amended Complaint, filed on October 29, 2025 (*see* **ECF #11**), do not support any such claims. Indeed, Plaintiff does not allege that she suffered any adverse employment action or "less well" treatment on the basis of her race nor any alleged disability. Plaintiff alleges that Mark Morris made one isolated remark regarding her hair "in the fall of 2022." *See* Amended Complaint ¶ 49. Plaintiff otherwise fails to mention a single occasion on which Defendants alluded to, acted in relation to, or in any other manner implicated or considered her race in connection with any employment-related decisions. Plaintiff admits that Defendants were made aware of the fact that she suffered from two pre-existing medical conditions at the time she was hired, *see* Amended Complaint, ¶ 57, and that Defendants accommodated her

in connection with both conditions and any other physical limitations she allegedly experienced during her employment. *See, e.g.*, Amended Complaint, ¶¶ 79-81, 87, 101-104, Plaintiff goes on to allege nothing more than a series of petty slights and trivial inconveniences she was allegedly subjected to, but does not set forth any causal connection between those inconveniences and her alleged protected disability status.

Plaintiff further admits that she was granted the accommodation of protected medical leave on four separate occasions and also relayed two separate discrimination complaints during her time working for Defendants, but does not allege nor explain how exactly she was retaliated against as the result of any such instance of engaging in protected activity. Plaintiff fails to explain how her series of alleged protected activities, occurring several months and in some cases over one year prior to her alleged May 21, 2024 termination, had anything to do with Defendants' decision to terminate her employment.

All-in-all, Plaintiff's Amended Complaint fails to state a claim upon which relief can be granted and should be dismissed in its entirety with prejudice.

## I.     THE STANDARD FOR DISMISSAL PURSUANT TO FED. R. CIV. P. 12(b)(6).

To defeat a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662 (2009) (quoting Bell Atlantic Corp v. Twombly, 550 U.S. 544 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." Id. While a court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). Thus, a pleading

that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. 544 at 555.

A complaint "does not need detailed factual allegations" to survive a Rule 12(b)(6) motion to dismiss, but a plaintiff must provide facts that plausibly suggest an entitlement to relief, which requires "more than labels and conclusions and a formulaic recitation of the elements of a cause of action." Id. Moreover, Fed. R. Civ. P. 8 "demands more than an unadorned, 'the-defendant unlawfully-harmed-me' accusation." Aquino v. Uber Techs., Inc., 2023 WL 3025268, at *3 (S.D.N.Y. Apr. 20, 2023) (citing Iqbal, 556 U.S. 662 at 678).

## II.  PLAINTIFF'S FIRST, THIRD, EIGHTH, AND TENTH CAUSES OF ACTION FAIL TO ESTABLISH THAT SHE WAS THE SPECIFIC SUBJECT OF ANY ADVERSE EMPLOYMENT ACTION OR "LESS WELL" TREATMENT ON THE BASIS OF HER RACE.

Plaintiff's First, Third, Eighth, and Tenth Causes of Action, either in whole or in part, identically allege discrimination on the basis of race pursuant to either Title VII, Section 1981, the NYSHRL, or the NYCHRL. Plaintiff's tangential allegations of race-based conduct, most of which have nothing to do with her nor the conditions of her employment, are simply insufficient to satisfy the pleading requirements set forth by any of these legal authorities.

### A. Plaintiff's Title VII claims fail because she does not allege that she suffered an adverse employment action on the basis of her race.

To make out a *prima facie* Title VII discrimination claim, a plaintiff must allege that: (1) she was a member of a protected class; (2) she was qualified for her position; (3) she was subjected to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination. *See* Paupaw-Myrie v. Mount Vernon City Sch. Dist., 653 F. Supp. 3d 80, 104 (S.D.N.Y. Jan. 30, 2023) (citing Leibowitz v. Cornell Univ., 584 F.3d 487, 498 (2d Cir. 2009)). An adverse employment action is "a materially adverse change in the terms and

conditions of employment, one which is more disruptive than a mere inconvenience or an alteration of job responsibilities." Royall v. City of Beacon, No. 24-cv-00003, 2024 WL 4266546, at *20 (S.D.N.Y. Sept. 23, 2024) (quoting Mathirampuzha v. Potter, 548 F.3d 70, 78 (2d Cir. 2008)). Examples of a material change include termination of employment, a demotion evidenced by some decrease in wages, a less distinguished title, material loss of benefits, significantly diminished job responsibilities, or other indices unique to a particular situation. Id., citing Mathirampuzha, 548 F.3d at 78-79 (quoting Sanders v. N.Y.C. Human Res. Admin., 361 F.3d 749, 755 (2d Cir. 2004)).

As to the fourth and final prong of the *prima facie* burden, a Title VII plaintiff must allege that "[her] employer took an adverse action against her at least in part for a discriminatory reason, and she may do so by alleging facts that directly . . . [or] indirectly show discrimination by giving rise to a plausible inference of discrimination." Paupaw-Myrie, 653 F. Supp. 3d at 105 (citing Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 84 (2d Cir. 2015)).

While Plaintiff alleges that she is an Afro-Latina woman who "immediately excelled in her apprenticeship," *see* Amended Complaint, ¶ 20, Plaintiff does not allege anywhere in her Amended Complaint that she was the specific subject of any adverse employment action because of her Afro-Latina status. Quite the opposite, Plaintiff admits in her Amended Complaint that "Artistic Director Mark Morris personally promoted her from apprentice to full Company member," *see* Amended Complaint, ¶ 21, with full knowledge of the fact that she was "the only black female dancer in the Company." *See* Amended Complaint, ¶ 25. Not only does Plaintiff fail to allege adverse treatment because of her race, but she admits that she was promoted and achieved success as the only dancer in the company with her specific racial make-up.

Because Plaintiff contradicts her overall theory of race-based discrimination at the outset of her factual allegations, the remainder of her Amended Complaint consists only of distracting

anecdotes regarding Mr. Morris' alleged day-to-day behavior toward others across several decades as Artistic Director. Plaintiff alleges a series of sporadic comments made by Mr. Morris directed toward other individuals, not herself, dating back several years prior to her joining the company. Plaintiff admits that many of those alleged comments occurred outside of her presence, and by the very nature of her allegations, Plaintiff did not personally experience nor remember the context of most, if not all the alleged occurrences she uses as the basis for her race discrimination claims.

For example, annexed to Plaintiff's Amended Complaint is the signed declaration of Charlton Boyd, who "worked as a company dancer for the Mark Morris Dance Group ("MMDG") from approximately 1994-2008." *See* Declaration of Charlton Boyd, ¶ 3, annexed to the Amended Complaint as **Exhibit 1**. Plaintiff, who began working for the organization fourteen years after Mr. Boyd's departure, alleges that Mr. Morris repeatedly called Mr. Boyd "the N-word in rehearsals and other group settings." *See* Amended Complaint, ¶ 34. Conspicuous by its absence is any allegation that Mr. Morris referred to Plaintiff in this manner or that he made such comments to others in her presence. Indeed, such comments being made in her presence is a factual impossibility considering Plaintiff's period of employment admittedly never overlapped with Boyd's.

Plaintiff also alleges that Mr. Morris singled out dancers such as Brandon "BJ" Randolph for "especially harsh treatment" and that Mr. Morris "sexually assaulted [BJ] in an elevator." *See* Amended Complaint, ¶ 37. Again, Plaintiff does not allege that she was the subject of any such behavior, nor that she was in any way made to be involved in these alleged occurrences. Plaintiff also alleges that Mr. Morris "made lewd comments to other employees, including receptionist McCall Atkinson, a Black woman," *see* Amended Complaint, ¶ 40, but does not allege that Mr. Morris made any such "lewd comments" to or about her, or even in her presence. Again, these alleged comments were made to other individuals, not Plaintiff, years prior to Plaintiff's alleged

termination or any adverse employment action Plaintiff alleges to have suffered. *See* Haggood v. Rubin & Rothman, LLC, No. 14-cv-34L, 2014 WL 6473527, at *12 (E.D.N.Y. Nov. 17, 2014) ("[s]ince it cannot reasonably be inferred that defendants acted with discriminatory intent from the racially discriminatory comments made by Hodge's co-workers more than one (1) year prior to any purported adverse action being taken against plaintiffs, to the extent plaintiffs base their race discrimination claims upon those comments, those claims are dismissed pursuant to Rule 12(b)(6) . . . for failure to state a claim").

It is obvious from these allegations that Plaintiff herself does not have any actionable claims for race discrimination. Even after attempting to allege that Mr. Morris "made a racist joke" during rehearsal in the fall of 2023, *see* Amended Complaint, ¶ 129, Plaintiff has no choice but to admit that she "does not recall the exact substance of the joke." *See* Amended Complaint, ¶ 130. While an inference of discrimination may arise from circumstances including invidious comments about others in a plaintiff's alleged protected class, comments that a plaintiff cannot even recall with any degree of specificity cannot possibly create this inference.

In terms of comments allegedly aimed in her direction, as opposed to those which are at most included as background and filler, Plaintiff identifies only one isolated comment Mr. Morris allegedly made regarding her hair. Plaintiff alleges the following in relevant part:

> But in the fall of 2022, Mr. Morris singled [Plaintiff] out in front of the other dancers and told her her hair was 'too big' for a ponytail and that she needed to find some way to 'keep it smaller.'

*See* Amended Complaint, ¶ 49.

Plaintiff then goes on to allege that, in or around the fall of 2023, "Mr. Morris again singled [Plaintiff] out in rehearsal and complained that her hair was 'too big.'" *See* Amended Complaint, ¶ 134. This is all she alleges. Two stray and isolated remarks regarding her hair separated by

roughly one full calendar year. Such barebones allegations are altogether insufficient to support a claim for unlawful discrimination under any of the relevant standards. *See* <u>Paupaw-Myrie</u>, 653 F. Supp. 3d at 98 (dismissing race discrimination claims where a school principal's alleged comment regarding a former teacher's hair constituted an isolated and stray remark that did not support inference of discrimination).

Much like the stray remark in <u>Paupaw-Myrie</u>, Mr. Morris' alleged comment regarding Plaintiff's hair, even if repeated once in the fall of 2023, occurred so far in advance of Plaintiff's alleged termination on or about May 21, 2024 that it cannot be reasonably inferred that the two are correlated in any way. *See* <u>Royall</u>, No. 24-cv-00003, 2024 WL 4266546, at *20 ("Courts consistently dismiss similar cases where plaintiff makes only conclusory allegations with regard to causation") (citing <u>Sosa v. N.Y.C. Dep't of Educ.</u>, 368 F. Supp. 3d 489, 516 (E.D.N.Y. Mar. 25, 2019)) (dismissing a hostile work environment claim where the plaintiff failed to make any "non-conclusory allegation[s] that suggest[ed] that the conduct that is the basis of the hostile work environment was as a result of her race or skin color"); *see also* <u>Salas v. N.Y.C. Dep't of Investigation</u>, 298 F. Supp. 3d 676, 684 (S.D.N.Y. Mar. 30, 2018) (dismissing hostile work environment claim where the plaintiff "ha[d] not alleged sufficient non-conclusory facts to support her hostile-work-environment claim under Title VII").

Since Plaintiff has not alleged suffering an adverse employment action because of her race, and only that Mr. Morris has displayed what could best be described as minor "insensitivities" toward others who share her race, her Title VII claims for race discrimination should be dismissed in their entirety with prejudice.

**B. Plaintiff's Section 1981 claims fail because she does not allege that her race was the but-for cause of any injury she specifically suffered.**

To state a discrimination claim under Section 1981, a plaintiff must plausibly allege that: (1) the plaintiff is a member of a racial minority, (2) the defendant intended to discriminate on the basis of race, (3) the defendant's discrimination concerned one of Section 1981's enumerated activities, and (4) the plaintiff's alleged injury would not have occurred but for the defendant's discrimination. Mitchell v. Planned Parenthood of Greater N.Y., Inc., 745 F. Supp. 3d 68, 106 (S.D.N.Y. Aug. 16, 2024); *see also* Royall, No. 24-cv-00003, 2024 WL 4266546, at *15 (quoting Kirkland-Hudson v. Mount Vernon City Sch. Dist., 665 F. Supp. 3d 412, 444 (S.D.N.Y. Mar. 29, 2023) ("under § 1981, to 'prevail, a plaintiff must initially plead and ultimately prove that, but for [their protected characteristic or characteristics], [she] would not have suffered the loss of a legally protected right'")).

The standard of "but-for" causation required by Section 1981 is even more burdensome for a plaintiff to satisfy than Title VII's causation standard. Seeing as Plaintiff fails to allege causation under the Title VII standard, Plaintiff's claims for Section 1981 discrimination necessarily fail as well. *See, e.g.*, Mitchell, 745 F. Supp. 3d at 16 (dismissing Section 1981 race discrimination claim for plaintiff's failure to allege that race was the but-for cause of his injury); Cardwell v. Davis Polk & Wardwell LLP, No. 19-cv-10256, 2020 WL 6274826, at *42 (S.D.N.Y. Oct. 24, 2020) ("Under Section 1981, 'a plaintiff must initially plead . . . that, but for race, it would not have suffered the loss of a legally protected right'") (citing Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media, 140 S. Ct. 1009, 1019 (2020)).

### C. Plaintiff's NYSHRL and NYCHRL claims fail because she does not allege that she was subjected to any "less well" treatment on the basis of her race.

To satisfy her initial pleading burden under the NYSHRL and NYCHRL, a plaintiff must show that: (1) she is a member of a protected class, (2) she was qualified to hold the position, (3) she has been treated "less well" than other employees, and (4) the treatment occurred under circumstances giving rise to an inference of discrimination." Miller v. Levi & Korsinsky LLP, 695 F. Supp. 3d, 2023 WL 6293940, at *4 (S.D.N.Y. Sept. 27, 2023); *see also* Dixon v. City of N.Y., No. 23-cv-8941, 2025 WL 50140, at *14 (S.D.N.Y. Jan. 7, 2025) ("courts in this District have interpreted the [2019] amendment 'to render the standard for claims [under the NYSHRL] closer to the standard of the NYCHRL'"). While this standard is less burdensome for a plaintiff to satisfy than those set forth by Title VII and Section 1981, the NYSHRL and NYCHRL do not intend to operate as "general civility code[s]." McSweeney v. Cohen, 2025 WL 966022, at *10 (S.D.N.Y. Mar. 31, 2025) (quoting Nofal v. IMCMV Times Square LLC, 2024 WL 1138928, at *4 (S.D.N.Y. Mar. 15, 2024)). As such, even under the NYSHRL and NYCHRL, a plaintiff "must still allege facts on the basis of which a court can find differential treatment–*i.e.* the plaintiff was treated less well–because of a discriminatory intent." Wasserman v. New York City Department of Education, 2025 WL 1906978 at *9 (S.D.N.Y. July 10, 2025) (quoting Workneh v. Super Shuttle Int'l, Inc., No. 15-cv-03521 (ER), 2016 WL 5793744, at *9 (S.D.N.Y. Sept. 30, 2016)).

Plaintiff's vague allegations of sparse racial comments, only two of which were actually aimed at her, do not rise above allegations of "petty slights or trivial inconveniences." *See* Dixon, No. 23-cv-8941, 2025 WL 50140, at *13 (citing Ndongo v. Bank of China Ltd., No. 22-cv-5896, 2023 WL 2215261, at *8 (S.D.N.Y. Feb. 24, 2023)). As noted above, Plaintiff does not otherwise allege that she was the specific subject of any actions by Defendants that implicated or in any other way involved her race. Most of the alleged insensitive commentary by Mr. Morris constitutes

nothing more than speculative and, eventually, inadmissible hearsay as Plaintiff admits she herself did not witness essentially any of the alleged conduct. The fact that she "found it ironic [that Mr. Morris would comment on her hair] in light of his prior comments that he was 'pro-Black hair' and had many 'Black friends," *see* Amended Complaint, ¶ 137, is, at most, an observation of how she felt. But mere observations and feelings about off-putting comments are not actionable as discriminatory. *See* <u>McSweeny</u>, 2025 WL 966022, at *268 ("even if Cohen's comment may have been obnoxious and insensitive, as an objective matter it did not rise above the level of a 'petty slight'"); *see also* <u>Sosa v. Loc. Staff, LLC</u>, 618 Fed. Appx. 19, 19–20 (2d Cir. 2015*)* (finding supervisor's single comment, "[y]ou're so street" to be "nothing more than what a reasonable victim of discrimination would consider petty slights and trivial inconveniences" under NYCHRL); <u>Goodwine v. City of New York</u>, 2016 WL 3017398, at *8–9 (S.D.N.Y. May 23, 2016) (finding no NYCHRL gender-related claim based on supervisors referring to plaintiff as a "cunt" and "bitch" where no allegation that "stray remarks using nominally gendered or racial language had a discriminatory motive").

Outside of the one stray remark regarding her hair which was allegedly repeated on one additional occasion, the remainder of Plaintiff's allegations are that Defendants "placed higher expectations on her than on other dancers," that she "understudied many roles" but never received "targeted, one-on-one 'understudy rehearsals,'" was "expected to learn the roles she understudies simply by watching other dancers perform," and was "publicly reprimanded" for showing up late to rehearsal. *See* Amended Complaint, ¶¶ 52, 54, 55, 144. Much like every other allegation in the Amended Complaint, these assertions are indicative only of the fact that Plaintiff was not thrilled with her position in the company. However, Plaintiff does not mention her race **<u>at all</u>** in the context of her feelings of resentment nor how her race played any role in any deteriorating relationship

with Defendants as her employer. Plaintiff's overt failure to allege conduct rising to the level of "less well" treatment on the basis of her protected status as an Afro-Latina woman warrants the dismissal of her discrimination claims pursuant to both the NYSHRL and NYCHRL.

### III.    PLAINTIFF'S FIFTH, EIGHTH, AND TENTH CAUSES OF ACTION FAIL TO ESTABLISH ANY FAILURE TO ACCOMMODATE OR ANY CONNECTION BETWEEN THE PETTY SLIGHTS AND TRIVIAL INCONVENIENCES SHE ALLEGEDLY EXPERIENCED AND THE ALLEGED PHYSICAL LIMITATIONS SHE CLAIMS TO HAVE SUFFERED FROM.

Plaintiff's Fifth, Eighth, and Tenth Causes of Action all allege that she was discriminated against on the basis of her alleged torn Achilles tendon, an alleged surgery she underwent because of her Endometriosis diagnosis, and her alleged Undifferentiated Autoimmune Disease pursuant to the ADA, NYSHRL, and NYCHRL. Much like her race discrimination claims, Plaintiff fails to make out a *prima facie* case for discrimination on the basis of her alleged disabilities pursuant to all three governing authorities. Other than identifying a series of alleged disabilities and jumping to the conclusion that she was treated differently because of them, Plaintiff fails to set forth any causal connection between her alleged disabilities and any unlawful mistreatment by Defendants.

### A.    Plaintiff's ADA claims fail because she does not allege a failure to accommodate nor any causal connection between her alleged disabling conditions and an alleged adverse employment action.

"The elements of an ADA [discrimination] claim are that: (1) the employer is subject to the ADA, (2) the employee is disabled or is perceived to be disabled as defined by the ADA, (3) the employee is qualified to perform the essential functions of the job, with or without reasonable accommodations, and (4) the employee suffers an adverse employment action because of his disability." *See* Williams v. Dudley, No. 23-cv-11018, 2025 WL 2842286, at *4 (S.D.N.Y. Sept. 4, 2025) (quoting Sharikov v. Philips Med. Sys. MR, Inc., 103 F.4th 159, 166 (2d Cir. 2024) (citing Davis v. N.Y.C. Dep't of Educ., 804 F.3d 231, 235 (2d Cir. 2015)).

As relevant here, the ADA defines a disability as "a physical or mental impairment that substantially limits one or more major life activities of such individual" or "being regarded as having such an impairment." *See* Id. (quoting Newell v. State Univ. of N.Y. Westchester Cnty. Coll., No. 22-cv-8524 (PMH), 2023 WL 4082030, at *3 (S.D.N.Y. June 20, 2023) (quoting 42 U.S.C. § 12102(1)). "The ADA contains a non-exhaustive list of major life activities, which includes caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." Id. (quoting Anderson v. City of New York, 712 F. Supp. 3d 412, 432 (S.D.N.Y. 2024). "[V]ague factual allegations [that] do not describe the conditions or disorders causing the alleged impairments, or how these impairments substantially impacted several major life activities or [the plaintiff's] ability to work" are insufficient to survive a motion to dismiss. Anderson, 712 F. Supp. 3d at 433.

To constitute an adverse employment action in the context of a discrimination claim, the alleged action must cause "a materially adverse change in the terms and conditions of employment." Williams, No. 23-cv-11018, 2025 WL 2842286, at *5 (quoting Mathirampuzha, 548 F.3d at 78-79)). The change in working conditions "must be more disruptive than a mere inconvenience or an alteration of job responsibilities." Id. "Examples of such a change include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." Id.

In order to make out a *prima facie* failure to accommodate claim under the ADA, a plaintiff must demonstrate that: (1) they are a person with a disability under the meaning of the ADA; (2) their employer covered by the statute had notice of their disability; (3) with reasonable

accommodation, they could have performed the essential functions of the job; and (4) the employer refused to make such accommodations. <u>Williams</u>, No. 23-cv-11018, 2025 WL 2842286, at *6.

Plaintiff identifies a handful of alleged disabilities in her Amended Complaint, including two alleged "pre-existing conditions" she admits Defendants were "aware of " at the time she was hired. *See* Amended Complaint, ¶ 57. In doing so, Plaintiff admits that she was hired as a dancer, a role which required her to be physically capable of performing on stage, despite Defendants' knowledge of her pre-existing conditions. This alone undercuts any theory that Plaintiff's pre-existing conditions had anything to do with decisions that were later made with respect to the terms and conditions of her employment. If she had them at the time she was hired, it cannot be inferred that she was fired because of them.

Plaintiff then alleges that, in late November 2022, after injuring her Achilles, Executive Director, Nancy Umanoff, "grudgingly agreed to remove [Plaintiff] from three sections of [an upcoming] show," but "did not offer any other accommodation, including medical leave." *See* Amended Complaint, ¶¶ 79-80. But the very next sentence of Plaintiff's Amended Complaint reads that Plaintiff "ended up taking medical leave for about 10 days in December 2022." *See* Amended Complaint, ¶ 81. Plaintiff does not allege that she was demoted, given a different title, or that the conditions of her employment were in any way altered because of her Achilles injury. Instead, she admits that she was injured and reasonably accommodated with the opportunity to take time off.

Plaintiff next alleges that, after Defendants granted her the opportunity to take leave to care for her Achilles and to undergo a surgical procedure related to her Endometriosis, she was only permitted to participate in classes, not performances, for a few months. *See* Amended Complaint, ¶ 87. Plaintiff not only admits that she was accommodated with time off to tend to these physical complications but also that Defendants accommodated her need for light duty as she recovered.

Plaintiff further alleges that she took a second medical leave from March 10, 2023 until April 17, 2023 in connection with an issue related to her "digestive tract and gall bladder." *See* Amended Complaint, ¶¶ 101-104. This is yet another admission by Plaintiff that Defendants accommodated her many alleged disabilities with time off. Crucially, Plaintiff does not explain how any of these alleged injuries and disabilities, all of which Defendants accommodated over the course of several years, magically resulted in or had anything to do with her alleged termination.

Moreover, despite the Amended Complaint providing countless examples of Defendants affording her reasonable accommodation, Plaintiff arrives at the conclusion that Defendants failed to accommodate her when her physical therapy appointments allegedly conflicted with rehearsal scheduling. *See* Amended Complaint, ¶¶ 122-128. But failing to grant one single accommodation request on the heels of granting several others is insufficient to adequately plead an overall adverse employment action in the context of a disability discrimination claim. *See, e.g.*, <u>Kirkland-Hudson</u>, 665 F. Supp. 3d at 458 (explaining that "a failure to provide a reasonable accommodation in and of itself does not equate to an adverse employment action in the disability discrimination context"); <u>Sosa</u>, 368 F. Supp. 3d at 496 (explaining that courts consider the underlying conduct in connection with an alleged failure to accommodate and that the failure to accommodate itself is insufficient to establish an adverse employment action). Here, Plaintiff alleges underlying conduct which overwhelmingly supports the only possible conclusion that she was in fact accommodated and did not suffer any adverse employment action on the basis of her alleged disabilities.

**B. Plaintiff's NYSHRL and NYCHRL claims fail because she alleges only mere petty slights and trivial inconveniences as the basis for her discrimination claims and fails to connect those slights and inconveniences to her alleged physical limitations.**

In addition to her failure to accommodate claims under the ADA, Plaintiff alleges that she was subjected to a hostile work environment on the basis of her alleged disabilities in violation of

both the NYSHRL and NYCHRL. A *prima facie* claim for hostile work environment under the NYSHRL requires that the complained of conduct "(1) be objectively severe or pervasive – that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's protected status." *See* Kugel v. Queens Nassau Nursing Home Inc., 568 F. Supp. 3d 253, 264 (E.D.N.Y. Oct. 20, 2021) (citing Patane v. Clark, 508 F.3d 106, 113 (2d Cir. 2007)). For the complained of conduct to be sufficiently pervasive, it "must be more than episodic; [it] must be sufficiently continuous and concerted." Kugel, 568 F. Supp. 3d at 263 (citing Alfano v. Costello, 294 F.3d 365, 374 (2d Cir. 2002) (quoting Perry v. Ethan Allen, Inc., 115 F.3d 143, 149 (2d Cir. 1997)).

The NYCHRL carries a more lenient pleading standard, requiring that a plaintiff allege differential treatment of any degree based on a discriminatory motive. *See* Wasserman, 2025 WL 1906978 at *9 (citing Lebowitz v. New York City Dep't of Educ., 407 F. Supp. 3d 158, 176 (E.D.N.Y. Mar. 31, 2017)) (even under [the NYCHRL's] more liberal pleading standard, a plaintiff must still plausibly allege that he or she was subjected to unequal treatment because of a protected characteristic).

Even under the more lenient NYSHRL and NYCHRL pleading standards, broad and conclusory allegations that a plaintiff was discriminated against or subjected to a hostile work environment lack the requisite specificity required to survive a pre-answer motion to dismiss and are thus insufficient to plead an actionable discrimination claim. Espinoza v. CGJC Holdings LLC, No. 23-cv-9133 (DLC), 2024 WL 3520662, at *7 (S.D.N.Y. July 23, 2024). Like claims for race discrimination under both statutes, the conduct alleged for a disability discrimination claim must exceed what a reasonable employee would consider "petty slights and trivial inconveniences." *See*

<u>Villada v. Grand Canyon Diner</u>, No. 22-cv-2782, 2024 WL 3875778, at *9 (E.D.N.Y. Aug. 19, 2024). Significant harms are thus distinguishable from ordinary tribulations, meaning that rude treatment by coworkers, callous behavior and harsh criticisms by a superior, or general personality conflicts are not actionable as discriminatory. *See* <u>Payne v. JetBlue Airways Corp.</u>, No. 20-cv-00101 (NRM) (PK), 2024 WL 3360381, at *10 (E.D.N.Y. July 9, 2024).

As illustrated above, Plaintiff's Amended Complaint lays out a series of instances where Plaintiff was accommodated in connection with her disabilities. In an effort to allege that she was somehow also subject to a hostile work environment while Defendants accommodated her alleged disabilities, Plaintiff again relies on hearsay, gossip, and conjecture. For example, Plaintiff alleges she was told that Mr. Morris "hates when people are injured." *See* Amended Complaint, ¶ 67. But being told that the Artistic Director of a dance organization is not fond of his dancers being injured and ineligible to perform can hardly be considered an action at all, let alone an adverse employment action or hostile treatment on the basis of disability.

Plaintiff also alleges that Mr. Morris "snapped" on her for attempting to ask a question in rehearsal but that he had never declined to answer any dancer's questions before she reported her injury. *See* Amended Complaint, ¶¶ 69-71. Other than baselessly concluding that Mr. Morris "snapping" on her must have been related to her alleged physical injury, Plaintiff does not attribute this alleged behavior to her alleged disability status in any way.

Plaintiff also sporadically alleges encountering an "attitude" from Company Director, Sam Black, noticing a passive-aggressive tone from Chief Financial Officer, Elizabeth Fox, and other minor interpersonal problems with her fellow dancers. *See* Amended Complaint, ¶¶ 75, 91, 93-94, 95, 133, 184-188. But, like her claims for race discrimination, Plaintiff does not connect any of these episodic personality conflicts to her protected status. *See* <u>Dixon</u>, No. 23-cv-8941, 2025 WL

50140, at *12 (dismissing plaintiff's NYCHRL disability discrimination claims for failure to allege direct evidence of discriminatory intent other than petty slights and trivial inconveniences). For this reason, Plaintiff's disability discrimination claims should be dismissed in their entirety with prejudice.

## IV.   PLAINTIFF'S SECOND, FOURTH, SIXTH, NINTH, AND ELEVENTH CAUSES OF ACTION RELY ON SCATTERED INSTANCES OF PROTECTED ACTIVITY WHICH SHE FAILS TO CONNECT IN ANY WAY TO HER TERMINATION.

Plaintiff's Second, Fourth, Sixth, Ninth, and Eleventh Causes of Action allege claims for retaliation pursuant to Title VII, Section 1981, the ADA, NYSHRL, and NYCHRL respectively. The pleading requirements for retaliation under each statute are not satisfied by the allegations in the Amended Complaint because Plaintiff does not connect her termination or any alleged act of retaliatory behavior to any particular instance of protected activity, nor does she allege how exactly she was deterred from engaging in future protected activity. Instead, she haphazardly claims that every complaint she ever made and encounter she ever experienced together gave Defendants the idea to subject her to a hostile workplace and ultimately terminate her employment. Allegations of this nature are far too conclusory and speculative to satisfy Plaintiff's initial pleading burden under any of the relevant standards.

### A.   Plaintiff's retaliation claims fail because she fails to allege an adverse employment action or that she was reasonably deterred from bringing an additional protected complaint as the result of Defendants' response to her protected activity.

To establish a prima facie case of retaliation under Title VII, Section 1981, and the ADA, the plaintiff must show that: "(1) [s]he was engaged in an activity protected under [either statute]; (2) h[er] employer was aware of h[er] participation in the protected activity; (3) the employer took adverse action against h[er]; and (4) a causal connection existed between the protected activity and the adverse action." Crosby v. Stew Leonard's Yonkers LLC, 695 F. Supp. 3d 551, 571 (S.D.N.Y.

Sept. 28, 2023) (quoting Zann Kwan v. Andalex Grp. LLC, 737 F.3d 834, 843 (2d Cir. 2013)) (Parker, J., concurring in part); *see also* Cadet v. All. Nursing Staffing of New York, Inc., 632 F. Supp. 3d 202, 236-37 (S.D.N.Y. Sept. 29, 2022) (quoting Littlejohn v. City of New York, 795 F.3d 297, 312, 315-16, 320-21 (2d Cir. 2015)) (". . . retaliation claims are analyzed in the same manner and under the same tests under both Title VII and Section 1981"); Sharikov v. Philips Med. Sys. MR, Inc., 2023 WL 2390360 (N.D.N.Y. Mar. 7, 2023) (citing Salas, 298 F. Supp. 3d at 685 (explaining that the ADA and Title VII contain "nearly identical language, and retaliation claims under the two statutes are analyzed under the same framework")). Accordingly, "for a retaliation claim to survive . . . a motion to dismiss, the plaintiff must plausibly allege that: (1) defendants discriminated – or took an adverse employment action – against him, (2) 'because' he has opposed any unlawful employment practice." Id. (quoting Vega, 801 F.3d 72, 90 (2d Cir. 2015). To establish that causal connection, a plaintiff must plausibly allege that retaliation was a but-for cause of [her] employer's adverse action. *See* Farmer v. Shake Shack Enters., LLC, 473 F. Supp. 3d 309, 332–33 (S.D.N.Y. July 21, 2020).

Retaliation claims under the NYCHRL and NYSHRL are assessed under a "similar but slightly broader standard [as federal law]." *See* Ronen v. RedRoute, Inc., 763 F. Supp. 3d 319, 333-34 (E.D.N.Y. Jan. 24, 2025) (quoting Qorrolli v. Metro. Dental Assocs., 124 F.4th 115, 122 (2d Cir. 2024). Under the NYCHRL, "a plaintiff claiming retaliation must demonstrate 'that she took an action opposing her employer's discrimination and that, as a result, [her] employer engaged in conduct that was reasonably likely to deter a person from engaging in such action.'" Id. (quoting Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 112 (2d Cir. 2013)). But as to causation, "the NYCHRL only requires that the protected activity be a 'motivating factor' in the adverse action, and not its 'but-for' cause, as would be required under federal law." Lee v.

Riverbay Corp., 751 F. Supp. 3d 259, 284, No. 22-CV-7504 (LTS) (S.D.N.Y. Sept. 27, 2024) (citing Mihalik, 715 F.3d at 112; Chin v. N.Y.C. Dep't of Corr., No. 23-CV-5268 (AMD) (JAM), 2024 WL 2258033, at *3 (E.D.N.Y. May 17, 2024)). That said, even under the NYCHRL, "a defendant is not liable if the plaintiff fails to prove the conduct is caused at least in part by discriminatory or retaliatory motives." Mihalik, 715 F.3d at 113; see also Forrester v. Corizon Health, Inc., 752 Fed. Appx. 64, 66 (2d Cir. 2018) ("Although the NYCHRL's retaliation provision is broader than at least some federal anti-discrimination laws, a plaintiff bringing a retaliation claim under the NYCHRL still must adduce admissible evidence that retaliation was at least a partial motivating factor."). In Qorrolli, the Second Circuit indicated that the NYSHRL's standard for actionable retaliation aligns with that of the NYCHRL. See Qorrolli, 124 F.4th at 122–23 (relying on 2019 amendments to liberal construction provision).

Plaintiff's retaliation claims first relate to her alleged discrimination complaint to Mr. Black on or about December 22, 2023. Specifically, Plaintiff alleges she complained of feeling punished for taking medical leave in connection with her injuries and allegedly being singled out in rehearsals by Mr. Morris and other dancers. See Amended Complaint, ¶¶ 160-172. Plaintiff does not explain how exactly she was retaliated against for bringing forward these alleged complaints outside of feeling "uneasy" about Mr. Black's alleged feedback. See Amended Complaint, ¶ 172. The fact that Plaintiff did not appear satisfied with the results of her meeting does not, by itself, constitute an adverse action or any sort of retaliatory conduct on the part of Defendants. Indeed, Plaintiff does not allege that she was subjected to any retaliatory conduct following this complaint.

Plaintiff further alleges that, after arriving two minutes late for a performance on or about January 19, 2024, a fellow dancer "accosted her, called her 'girl', and berated her for her arrival time in front of everyone in the women's dressing room." See Amended Complaint, ¶ 184. On or

about January 26, 2024, Plaintiff alleges she complained of this alleged encounter to Human Resources Business Partner, Jessica Loyola, but that Loyola was "extremely cold and hostile" in response. *See* Amended Complaint, ¶¶ 202-205. Again, this is all Plaintiff alleges.

Notably, Plaintiff does not allege that she was treated any differently after relaying her alleged complaints to Black and Loyola than she was prior thereto, nor that she was deterred from future protected activity because of the way Defendants responded. *See* Bloise v. Q4 Generational Wealth, Inc., 22-cv-10488 (JHR) (SDA), 2024 WL 2798862, at *2 (S.D.N.Y. May 31, 2024) (allegations that defendant retaliated by making offensive comments are insufficient to establish that a reasonable person would be deterred from opposing future discriminatory action; motion dismissed). In fact, Plaintiff admits that she came forward with a protected complaint roughly one month after her first complaint to Black, indicating that no reasonable person, not even herself, would be deterred from doing so based on anything Black allegedly said or did. Plaintiff further fails to allege that Defendants responded to her January 26, 2024 complaint to Loyola in a manner that would deter a reasonable person from engaging in such protected activity. Other than alleging that Loyola's "resentment was palpable," *see* Amended Complaint, ¶ 213, Plaintiff does not assert any tangible conduct on the part of Defendants that would be reasonably likely to deter a person from engaging in protected activity.

Since Plaintiff only alleges that she engaged in protected activity, and not that she was retaliated against in any manner because of that protected activity, her retaliation claims fail.

**B. Plaintiff's retaliation claims fail because they are predicated upon instances of protected activity occurring several months prior to her alleged termination.**

Plaintiff ultimately alleges that she was terminated on or about May 21, 2024 in retaliation for her alleged protected complaints on December 22, 2023 and January 26, 2024. But Plaintiff alleges nothing to support this conclusion. Plaintiff alleges that Loyola told her she was being

terminated "based on the last couple of months," *see* Amended Complaint, ¶ 259, but does not

allege that she was told it had anything to do with her alleged complaints five and six months prior.

Plaintiff even admits that Umanoff cited the absence of "muse-like inspiration" as the reason for

her termination.

Since Plaintiff does not allege why exactly her termination should be considered retaliation

for alleged protected complaints occurring several months prior, it should not and cannot simply

be assumed that the two are connected. Based on the gap in time alone, there is no inference of

retaliation here. Particularly where temporal proximity serves as the basis for the plaintiff's theory

of retaliation, there is a general limit to which courts in this Circuit are willing to infer that causal

connection from timing alone. Although the Second Circuit "ha[s] not drawn a bright line to define

the outer limits beyond which a temporal relationship is too attenuated to establish a causal

relationship between [a protected activity] and an allegedly retaliatory action . . . the temporal

proximity must be very close." Crosby, 695 F. Supp. 3d at 572 (quoting Summa v. Hofstra Univ.,

708 F.3d 115, 128 (2d Cir. 2013)), "[C]ourts in this Circuit have consistently held that a passage

of more than two months between the protected activity and the adverse employment action does

not allow for an inference of causation." Id. (quoting Flood v. UBS Asset Mgmt., No. 10-cv-374,

2012 WL 288041, at *17 (S.D.N.Y. Feb. 1, 2012); Smith v. N.Y. & Presbyterian Hosp., 440 F.

Supp. 3d 303, 343 (S.D.N.Y. Feb. 18, 2020).

In this case, Plaintiff's first alleged complaint to Black took place over twenty-one (21)

weeks prior to her alleged termination, and her second complaint to Loyola took place over sixteen

(16) weeks prior to her alleged termination. Where there is no other allegation regarding a causal

connection, significant gaps in time of this nature fail to support an inference of retaliation. *See,*

*e.g.*, Kirkland-Hudson, 665 F. Supp. 3d at 464 (citing Torre v. Charter Commc'ns, Inc., 493 F.

Supp. 3d 276, 288–89 (S.D.N.Y. Oct. 8, 2020)) (dismissing retaliation claim where alleged retaliatory conduct took place more than five months after protected activity and plaintiff failed to "allege any other evidence of a causal connection"); *see also* <u>Caddick v. Pers. Co. I LLC</u>, No. 16-cv-7326, 2018 WL 3222520, at *9 (S.D.N.Y. June 29, 2018) ("Nine or ten weeks is at the outer bounds of what is acceptable where, as here, a plaintiff relies solely on temporal proximity to demonstrate causation."); <u>Feliciano v. City of New York</u>, No. 14-cv-6751, 2015 WL 4393163, at *10 (S.D.N.Y. July 15, 2015) (for a retaliatory inference to arise, adverse activity must occur within approximately two months of plaintiff's protected activity).

## V.   **PLAINTIFF'S SEVENTH CAUSE OF ACTION RELIES ON PROTECTED FMLA LEAVE OCCURRING ONE YEAR PRIOR TO HER ALLEGED TERMINATION.**

Like other retaliation claims, to establish a *prima facie* case of FMLA retaliation, a plaintiff must establish that: "(1) [s]he exercised rights protected under the FMLA; (2) [s]he was qualified for his position; (3) [s]he suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." *See* <u>Crosby</u>, 695 F. Supp. 3d at 574 (quoting <u>Graziadio v. Culinary Inst. of Am.</u>, 817 F.3d 415, 429 (2d Cir. 2016). For the purposes of FMLA retaliation claims, an "adverse employment action" is "any action by the employer that is likely to dissuade a reasonable worker in the plaintiff's position from exercising [her] legal rights under the FMLA." <u>Id.</u>, citing <u>Millea v. Metro-North R. Co.</u>, 658 F.3d 154, 164 (2d Cir. 2011). "Petty slights, minor annoyances, and simple lack of good manners will not give rise to actionable retaliation claims." <u>Millea</u>, 658 F. 3d at 165.

Most importantly, like all other retaliation claims, the duration of time between the alleged protected activity and alleged adverse employment action plays a paramount role at the pleading stage. *See, e.g.*, <u>Desiderio v. Hudson Techs.</u>, No. 22-cv-541, 2023 WL 185497, at *5 (S.D.N.Y. Jan. 13, 2023) ("the duration of time between [Plaintiff] exercising [his] FMLA leave and [his]

termination was not particularly short, at approximately three months"); "In the absence of any further evidence suggesting retaliation, months of separation between protected activity and alleged retaliation cannot be considered very close." *See* Miller v. McHugh, 814 F. Supp. 2d 299, 321 (S.D.N.Y. Sept. 14, 2011) (finding temporal proximity of five months insufficient to establish a causal connection); Harrisman v. City of New York Dep't of Transportation, No. 19-cv-2986, 2020 WL 5211043, at *5 (S.D.N.Y. Sept. 1, 2020) (same for a period of three to four months).

Like her other claims for retaliation, Plaintiff does not explain how exactly she was subject to inferior terms or conditions of employment as the result of taking FMLA-protected leave. Plaintiff admits she was accommodated on four separate instances when Defendants granted her protected leave, once in December 2022 (seventeen months prior to her alleged termination), again in March 2023 (fourteen months prior to her alleged termination), again in December 2023 (six months prior to her alleged termination), and a final time in January 2024 (five months prior to her alleged termination). While there is no firm outer limit to the temporal proximity required to infer FMLA retaliation, most courts in the Second Circuit have held that a lapse of time beyond two or three months will break the causal inference. *See, e.g.*, Seitz v. New York State, No. 18-cv-4149, 2019 WL 4805257, at *11 (E.D.N.Y. Sept. 30, 2019).

## VI.  PLAINTIFF SHOULD NOT BE PERMITTED TO AMEND HER ALLEGATIONS AS SHE HAS ALREADY BEEN PLACED ON NOTICE OF DEFICIENCIES SHE HAS SINCE FAILED TO CURE.

Although Federal Rule of Civil Procedure 15(a) provides that leave to amend a complaint shall be freely given when justice so requires, it is within the sound discretion of the district court whether to grant or deny leave to amend." *See* Bloom v. A360 Media LLC, No. 23-CV-11024, 2024 WL 2812905, at *3 (S.D.N.Y. June 3, 2024) (quoting Schvimmer v. Off. of Ct. Admin., 857 Fed. Appx. 668, 671 (2d Cir. 2021)). Leave to amend may be denied where it is determined that

there has been a "repeated failure to cure deficiencies by amendments previously allowed." <u>Id</u>. (citing <u>United States ex rel. Ladas v. Exelis, Inc.</u>, 824 F.3d 16, 28 (2d Cir. 2016)).

In other words, where a plaintiff is put on notice of deficiencies in her original complaint, takes the opportunity to correct those deficiencies in an amended complaint, but then nonetheless fails to do so, dismissal with prejudice is appropriate. <u>Pimentel v. Port Authority of New York ad New Jersey</u>, 2025 WL 51131, *2 (E.D.N.Y. Jan. 8, 2025) (citing <u>Sprague v. Salisbury Bank & Tr. Co.</u>, 969 F.3d 95, 101 (2d Cir. 2020) (affirming dismissal with prejudice because of plaintiff's "[r]epeated failure to cure deficiencies by amendments previously allowed")); <u>Dickerson v. BPP PCV Owners LLC</u>, 2024 WL 4696088, at *2 (S.D.N.Y. Nov. 6, 2024).

Plaintiff first filed her original Complaint on October 21, 2025. *See* **ECF #1**. Just eight days later, on October 29, 2025, Plaintiff took the opportunity to amend her allegations with an Amended Complaint. *See* **ECF #11**. After exchanging an initial set of pre-motion letters pursuant to Your Honor's Individual Rules of Civil Practice, Section III(B)(ii), Defendants filed a pre-motion letter on January 12, 2026 setting forth specific pleading deficiencies in the Amended Complaint which warrant its dismissal for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6) (*see* **ECF #18**). Plaintiff then filed an opposition letter on January 20, 2026 (*see* **ECF #19**).

Despite going through these steps, Plaintiff has not cured the deficiencies of the Amended Complaint and still fails to state a claim upon which relief can be granted. Any further attempts to amend would be futile at this juncture considering Plaintiff has already been placed on notice of deficiencies she has since failed to correct. As such, the dismissal of this action with prejudice is warranted.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants' Motion to Dismiss Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) should be granted, and Plaintiff's Amended Complaint should be dismissed in its entirety with prejudice.

Dated:  Woodbury, New York
        February 20, 2026

MILBER MAKRIS PLOUSADIS
& SEIDEN, LLP

*Tyler B. Levenson*
Tyler B. Levenson, Esq.
Christopher Giovinco, Esq.
1000 Woodbury Road, Suite 402
Woodbury, New York 11797
(516) 712-4000
Our File No.: 420-30826
tlevenson@milbermakris.com
cgiovinco@milbermakris.com
*Attorneys for Defendants*

TO:     Hilary Joy Orzick
        Keenan & Bhatia
        90 Broad Street
        New York, New York 10004
        (646) 206-5311
        hilary@keenanfirm.com